UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 24-cr-37 (JWB/DJF) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| William Antonio McClendon, | |
| Defendant. | |

This matter is before the Court on Defendant William Antonio McClendon's Motion to Suppress Physical Evidence Obtained Pursuant to a Warrantless and Illegal Search ("Motion") (ECF No. 14). Mr. McClendon seeks to suppress evidence obtained as the result of a warrantless search by his parole officer, Ramsey County Intensive Supervised Release ("ISR") Agent Joseph Proulx, on October 6, 2023. The Court held a hearing on this matter on May 24, 2024, at which Agent Proulx testified. For the reasons given below, the Court recommends denying the Motion.

I. **Background**

In December 2009, Mr. McClendon was sentenced in Hennepin County District Court to 216 months of incarceration for first-degree assault, second-degree assault and second-degree attempted murder. *See State v. McClendon*, 27-cr-09-31530 (Minn. Dist. Ct.), Executed Felon Sentence.[1] The State of Minnesota released Mr. McClendon from prison on July 19, 2021 to the State of Wisconsin, where he was incarcerated for another two years (ECF No. 24 at 12). On the day of his release from custody in Minnesota, Mr. McClendon signed Conditions of Release, under

---

[1] Although this document is not part of the record in this action, the Court takes judicial notice of it as a public record filed in another court. *See, e.g., Gholston v. City of Minnesota*, 22-cv-1712 (ECT/DJF), 2022 WL 4736748, at *1 (D. Minn. Oct. 3, 2022), *report and recommendation adopted*, 2022 WL 14615505 (D. Minn. Oct. 25, 2022) (collecting cases).

which he agreed with the State of Minnesota to placement on ISR following his release from custody in Wisconsin (*see* ECF No. 15-1).  ISR is the most intensive form of supervision provided by the Minnesota Department of Corrections.  (ECF No. 24 at 7.)  ISR is typically a one-year program, following which an individual who does well in ISR will be placed on standard supervised release. (*Id.*)  During time spent in ISR, a program participant is subject to both standard and special conditions as approved by the Department of Corrections Hearings and Release Unit and set forth in his Conditions of Release (*see* ECF No. 15-1).  As one of the standard conditions of Mr. McClendon's release, he agreed to "submit to any unannounced visits or searches by [Agent Proulx] of [his] person, residence, possessions, cell phone, vehicle, or premises."  (ECF No. 15-1 at 2.)

Following Mr. McClendon's release from custody in Wisconsin in July 2023, the State of Wisconsin also placed him on supervised release, and he remained in Wisconsin from July 2023 until approximately September 25, 2023 (ECF No. 24 at 12–13).  During that time, he was subject to dual supervision by both Wisconsin and Minnesota. (*Id.*)  Because Mr. McClendon was unable to secure permanent or stable housing in Wisconsin, he moved to St. Paul, Minnesota on September 25, 2023 to take advantage of a transitional housing program for individuals on ISR operated through the Minnesota Department of Corrections (*id.* at 13–14).  Agent Proulx became Mr. McClendon's ISR Supervisor at that time (*id.* at 12).

On October 4, 2024, Agent Proulx documented a call from fellow ISR Agent Derrick Weinke.  (ECF No. 15-2; ECF No. 24 at 16–17.)  Agent Weinke said he received a report from Charles McAllister, one of Agent Weinke's supervisees living at the transitional home with Mr. McClendon,[2] that Mr. McClendon "has a gun on him or in his room at all times."  (ECF No. 15-

---

[2] Mr. McAllister has since passed away (*see* ECF No. 24 at 17).

2

2.) Mr. McAllister reported that Mr. McClendon had two firearms at one point, but had sold one of them, and was possibly dealing drugs from the front of the house. (*Id.*) Agent Proulx stated in the report of his call with Agent Weinke that he would "coordinate with DOC police to search [Mr. McClendon]," and that he would need to "figure out if best to search him while out and about or to wait for him to get home and possibl[y] have to search the entire house to find the gun, if he [did] indeed have one." (*Id.*)

Later that day, Agent Proulx covertly surveilled Mr. McClendon in an effort to verify whether Mr. Mclendon was carrying a firearm (ECF No. 24 at 19–21). He did not witness Mr. McClendon in possession of a firearm during his surveillance (*id.* at 19–20). On October 5, Agent Proulx contacted Agent Weinke and asked him to obtain confirmation from Mr. McAllister that Mr. McClendon was carrying a firearm. (*Id.*; ECF No. 15-3.) Agent Weinke called Agent Proulx later that day and reported that Mr. McAllister confirmed Mr. McClendon carried a gun when he left the house and had a gun in the house on the night of October 4 (ECF No. 15-3). After receiving that confirmation, Agent Proulx again surveilled Mr. McClendon. Agent Proulx watched Mr. McClendon walk from the house to a store about five blocks away (ECF No. 24 at 22). He did not observe Mr. McClendon carrying a firearm. (*Id.*)

On October 6, 2024, Agent Proulx decided to search Mr. McClendon based solely on the information he had received from Mr. McAllister through Agent Weinke. (*Id.*) Mr. McClendon sent Agent Proulx a text message with his plans for that day, including that he planned to go to the Hennepin County Service Center in Minneapolis (*id.* at 23–24). With the assistance of Department of Corrections Police, Agent Proulx went to the Hennepin County Service Center to search Mr. McClendon (*id.*). The officers met Mr. McClendon at the elevator on the first floor of the building, where they executed the search (*id.* at 23–25).

Agent Proulx testified that, during the search, Mr. McClendon was "very hostile, fighting, hostile, yelling, threatening, and he kept talking about, you don't – you can't search me, you don't have a warrant." (*Id.* at 26–27.) Mr. McClendon kept arguing with the officers and "so just trying to put an end to it," Agent Proulx told Mr. McClendon he had received a Crime Stoppers tip that Mr. McClendon was carrying a weapon. (*Id.* at 27.) Agent Proulx admits this was a misrepresentation but states he lied about the tip to protect the identity of Mr. McAllister, who at that time was still alive and living in transitional housing with Mr. McClendon. (*Id.*) Upon searching Mr. McClendon, the officers found fentanyl pills and a firearm shoved down into Mr. McClendon's pants or underwear. (*Id.* at 42-43.)

## II.   Analysis

Mr. McClendon argues the standard condition of his release requiring him to submit to "unannounced" searches of his "person, residence, possessions, cell phone, vehicle, or premises" authorized only "unannounced" searches, not "suspicionless" searches, such that reasonable suspicion was required to search him (*id.* at 6–7). Mr. McClendon further argues that the tips Agent Proulx received from Mr. McAllister through Agent Weinke were not sufficient to establish reasonable suspicion, such that the fruits of the search must be suppressed (*id.* at 7–11).

To challenge the legality of a search, the movant must establish he has "a reasonable expectation of privacy" in the location searched. *United States v. Maxwell*, 778 F.3d 719, 732 (8th Cir. 2015). Generally, if the movant makes such a showing, a "warrantless search is presumptively unreasonable absent some exception to the warrant requirement." *United States v. Ringland*, 966 F.3d 731, 735 (8th Cir. 2020) (quotation omitted).

However, individuals on supervised release, parole, or probation, "by virtue of their status alone … 'do not enjoy the absolute liberty to which every citizen is entitled.'" *Samson v.*

*California*, 547 U.S. 843, 848 (2006) (quoting *United States v. Knights*, 534 U.S. 112, 119 (2001)). "Supervised release, parole, and probation lie on a continuum. The most severe is 'supervised release,' which is ... followed, in descending order, by parole, then probation[.]" *United States v. Makeeff*, 820 F.3d 995, 1001 (8th Cir. 2016) (quoting *United States v. Lifshitz*, 369 F.3d 173, 181 n.4 (2d Cir. 2004)). These conditions are "one point … on a continuum of possible punishments ranging from solitary confinement in a maximum-security facility to a few hours of mandatory community service." *Knights*, 524 U.S. at 119 (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987)). When such individuals are subject to a search condition of which they are clearly informed, their expectation of privacy is significantly diminished. *Samson*, 547 U.S. at 849 (citation omitted). And individuals on supervised release are subject to "the most circumscribed expectation of privacy." *Makeeff*, 820 F.3d at 1001 (citation omitted).

In *Samson*, the Supreme Court held that a parolee subject to a condition requiring him to submit to suspicionless searches at any time could be searched without suspicion consistent with the Fourth Amendment. 547 U.S. at 847, 857. As the Court explained, "California's ability to conduct suspicionless searches of parolees serves its interest in reducing recidivism, in a manner that aids, rather than hinders, the reintegration of parolees into productive society." *Id.* at 854.

Mr. McClendon argues that because the condition of release at issue in this case only required him to submit to "unannounced visits or searches" (ECF No. 15-1 at 2), the State was authorized to conduct "unannounced" searches, but not searches in the absence of reasonable suspicion (ECF No. 28 at 7). But the Eighth Circuit's decision in *United States v. Kuhnel*, 25 F.4th 559 (8th Cir. 2022), forecloses Mr. McClendon's argument. In *Kuhnel*, the defendant was subject to a virtually identical search term. *Id.* at 562 (requiring the defendant to "submit at any time to an unannounced visit and/or search of the offender's person, vehicle or premises by the

agent/designee"). Based on that condition, the lower court found the warrantless search in question "was reasonable if supported by a reasonable suspicion that the probation officer would discover evidence of a parole violation." *United States v. Kuhnel*, 17-cr-158 (JRT/BRT), 2018 WL 481805, at *3 (D. Minn. Jan. 19, 2018). The court deemed the search permissible under that standard. *Id.* at *4. The Eighth Circuit affirmed the decision, but under a different standard, concluding that because the defendant was aware of the release condition, it followed that the "search was reasonable and permissible *even in the absence of suspicion*." *Id.* at 562, 564 (citing *United States v. Jackson*, 866 F.3d 982, 985 (8th Cir. 2017)) (emphasis added).

The search condition at issue here is in all material respects identical to the search condition in *Kuhnel*. (*Compare* ECF No. 15-1 at 2, *with Kuhnel*, 25 F.4th at 562.) Moreover, Mr. McClendon signed his conditions of release (ECF No. 15-1 at 3), so there can be no reasonable dispute—and Mr. McClendon has not disputed—that he was on notice of the relevant condition. The Court finds *Kuhnel* is binding precedent in this case and is compelled to follow it. *See, e.g.*, *United States v. Koech*, 18-cr-82 (DWF/LIB), 2018 WL 4907622, at *5 (D. Minn. Aug. 6, 2018), r*eport and recommendation adopted*, 2018 WL 4905602 (D. Minn. Oct. 9, 2018), *aff'd*, 992 F.3d 686 (8th Cir. 2021).

Furthermore, the Court finds Agent Proulx's decision to search Mr. McClendon was justified because he actually *had* a suspicion that was reasonable under the circumstances: (1) he received a specific, unequivocal tip that Mr. McClendon had a gun on himself or in his room "at all times"; (2) he obtained confirmation from the informant that Mr. McClendon had very recently possessed a gun and carried it whenever he left the house; (3) the informant was a known individual who lived with Mr. McClendon and thus had an opportunity to observe the information he was reporting; (4) Mr. McClendon's status as an individual on ISR indicated an unusually heightened

risk that Mr. McClendon would violate the law, even compared to other supervisees and probationers, *see Makeeff*, 820 F.3d at 1000-01; and (5) Agent Proulx was a highly experienced agent with at least 18 years of experience monitoring individuals on ISR to ensure compliance with their conditions (ECF No. 24 at 5–6). Based on these facts, and in light of the lesser privacy standard applicable to individuals on supervision, the Court finds Agent Proulx's suspicion that Mr. McClendon was carrying a gun was reasonable.

The Court thus concludes Mr. McClendon's conditions of release authorized Agent Proulx to conduct a search of Mr. McClendon's person. The Court recommends denying the Motion on these grounds.

## RECOMMENDATION

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT** Mr. McClendon's Motion to Suppress Physical Evidence Obtained Pursuant to a Warrantless and Illegal Search (ECF No. [14]) be **DENIED**.

Dated: August 15, 2024

*s/ Dulce J. Foster*
Dulce J. Foster
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).